Surrogate's Court. As has been seen, no letters of administration have been issued on the estate of the decedent, and consequently there is no proceeding pending in the Surrogate's Court. It was therefore, perhaps, proper for the court to hold and administer the fund, but in doing so we think an interlocutory judgment should have been entered directing the appointment of a referee to advertise for and take proof of the claims of creditors and report thereon. See Nat. Tradesmen's Bk. v. Wetmore, 124 N. Y. 241–254, 26 N. E. 548. Instead of that, this judgment appoints a receiver, to whom appellant is directed to deliver the policies, and the trust company is directed to pay the proceeds of the policies ratably to the plaintiff, the surety company, "and to such other creditors as shall after six weeks' advertisement in the New York Law Journal appear and prove their claims before said receiver and contribute to the expenses of this action." It would seem as though the validity of the claim should be first determined, and be finally adjudicated by the court, before the trust company should be required to pay over the money, except the costs of the action.

It follows that the judgment should be affirmed, with costs. All concur.

———

(83 App. Div. 414.)

FREMONT v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. May 15, 1903.)

1. CARRIERS—INJURIES TO PASSENGER—STREET CARS—NEGLIGENCE.
    Decedent attempted to board a combination street car moving between four and six miles per hour. Deceased lost his hold, fell under the car, and received injuries from which he died. There was no evidence that the motorman saw deceased. The conductor was inside the closed portion of the car, collecting fares, at the time of the accident. The motorman testified that after a blockade which had occurred they had orders to pass streets without taking passengers to equalize the traffic; that he did not slow up for passengers at the street where decedent attempted to board the car, and was not aware that any one attempted to do so. *Held*, that such facts were insufficient to establish negligence on the part of the railway company.

2. SAME—ASSUMPTION OF RISK.
    Decedent, in attempting to board the car under such circumstances, in the absence of an invitation by signal or otherwise from the conductor or motorman, assumed the risk of a change in the speed of the car and of his ability to get on in safety.

3. SAME—DUTY TO CALL WITNESS—FAILURE TO CALL—PRESUMPTIONS.
    Where, in an action against a street railway company for the killing of a passenger, it was shown that the conductor in charge of the car had left defendant's employ, and had gone to another state, and had refused to appear as a witness for defendant, and it did not appear that he saw the accident, or could have given any material evidence, it was error to charge that no adverse inference should be drawn from the absence of the conductor, except that the jury might consider defendant's failure to procure the conductor's testimony by commission as a circumstance bearing on the facts in the case.

Appeal from Trial Term, New York County.

¶ 2. See Carriers, vol. 9, Cent. Dig. § 1369.

Action by Henrietta Fremont, as administratrix of the estate of Francis M. Fremont, deceased, against the Metropolitan Street Railway Company. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial on the minutes, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Charles F. Brown, for appellant.
John S. Wise, for respondent.

LAUGHLIN, J. This is a statutory action to recover for the death of Francis M. Fremont, alleged to have been caused by the negligence of the defendant. On the 11th day of October, 1900, decedent, while attempting to board a north-bound car of the defendant on Church street at or near the northerly line of Cortlandt street, in the city of New York, slipped, stumbled, or fell, his feet passing under the car, and the wheels of the rear truck passed over his legs, inflicting injuries which resulted in his death. The defendant moved for a nonsuit at the close of the plaintiff's case upon the ground that the decedent was guilty of contributory negligence, and that no negligence on the part of the defendant was shown. This motion was renewed at the close of all the evidence, and to the denial of these motions the defendant excepted.

The accident occurred about half past 5 o'clock in the afternoon, at what the witnesses described as the "rush hour." There had been a blockade of the north-bound cars for about 20 minutes. The car which the decedent attempted to board was the second car passing north after the blockade. It appears without controversy that the decedent was not waiting at the usual place to board the car. The uncontroverted evidence shows that he ran toward or after the car, and attempted to board it while it was moving and while he was running. Some of the testimony indicated that, as the car was passing over Cortlandt street, he followed it on a run from the southeasterly corner, and attempted to board it at or beyond the northerly line of Cortlandt street; and other testimony indicates that he ran out from a point on the easterly sidewalk of Church street, and a little north of Cortlandt street, diagonally towards the car, and attempted to board it about 20 feet northerly of the northerly crosswalk. The car was in motion at the time the decedent attempted to board it, and its speed is variously described by witnesses as "going well, fairly, at a good gait; at least, a fair gait"; "at a pretty fair rate of speed, about the usual rate"; but each of the witnesses gives a more definite estimate of the speed except one called by the defendant. Two witnesses called by the plaintiff testified on this subject. One of these witnesses was running after the car from the southwest corner of Cortlandt and Church streets, and, as he neared the car, was just behind the decedent. He says that the car seemed to be making up lost time, and that he would judge it was going more than four miles an hour. The other testified that the car was going at the rate of four or five miles an hour, and that the decedent attempted to board it when it was going about five miles an

hour. The motorman, who at the time of the trial was not in the employ of the company, testified that as he approached Cortlandt street he slowed down to about four miles an hour, and again accelerated his speed while crossing Cortlandt street, and, after passing the middle of the street, was going five or six miles an hour; that his car was 20 minutes behind time, and that during the "rush hours," when there has been a blockade, they have orders to take only a few passengers, and to pass streets without taking passengers, in order to equalize the traffic; that he did not stop or slow up for passengers at Cortlandt street, and was not aware that any one attempted to board the car there. One of the plaintiff's witnesses testified that the decedent, while at or near the southeast corner of Cortlandt and Church streets, signaled the motorman to stop by holding up his hand; but it does not appear that the motorman saw him or acknowledged his signal; and this witness claims to have signaled the motorman himself on the southwest corner, but concedes that the motorman paid no attention to his signal. The car was a combination car, the open seats being in front and the closed part in the rear. Decedent attempted to board it about the middle, just in front of the closed part. He took hold of the stanchion with one or both hands, and stepped or attempted to step upon the running board. Testimony of one of the plaintiff's witnesses is to the effect that just at this time the speed of the car was suddenly accelerated, and that the decedent's foot slipped, or he did not secure a foothold, and, after being dragged, as already stated, he dropped off. The conductor was in the closed part of the car, collecting fares, and it does not appear that either he or the motorman saw the decedent attempting to board the car. Several other men rushed for and succeeded in boarding the car near the northerly cross-walk just before the decedent attempted to board it. There is evidence tending to show that the car slackened its speed somewhat while passing over the crossing, but this slackening is stated to have been "imperceptible," and to have been at a time when there were people passing over the track from west to east.

It was the duty of the motorman to have his car under control as he approached this crossing, and to slow down while passing over Cortlandt street, if there were people crossing the track, as testified to by one of the witnesses. This is an important duty, which the defendant owes to the traveling public, and has been repeatedly announced and enforced by the courts. It will not do to hold that, when the railroad company has its car under control, and slackens its speed, in obedience to this duty, this is notice to people anywhere in sight of the car that it is going to stop, or an invitation to people to run and attempt to board the car before it stops. Perhaps, under all the circumstances, and in view of the fact that others were boarding the car at this time, it may not be said that the decedent was guilty of contributory negligence as matter of law; but we fail to discover any evidence of negligence on part of the defendant. There was no invitation to the decedent to board the car, and there is no evidence that the motorman or conductor knew that he was attempting to board the car at the time the speed was accelerated. The company

cannot be held negligent merely because the motorman did not stop to take on passengers at this crossing. It is evident that if, after cars have been delayed, every car in the vicinity of the blockade stopped to take on all passengers, the cars would become over-crowded, and unable to take on passengers at other crossings, and frequent and long stops by the first cars out of the blockade would tend to prolong the effects of the blockade, and not relieve and equalize the traffic over the entire line. It is, therefore, necessary in some circumstances for the cars to pass streets without taking on passengers. The company should not be chargeable with negligence from the mere fact that the speed of the car passing over a crossing at the rate of four or more miles per hour is somewhat accelerated at the usual point of stopping to take on passengers, when the circumstances were such that it was not intended to stop at that point. Those who attempt to board a car under such circumstances going at a speed of four, five, or six miles an hour, in the absence of an invitation by signal or otherwise from the conductor or motorman, assumed the risk of the change of speed and of their ability to get on in safety. For these reasons we think the motion for a nonsuit and for dismissal of the complaint should have been granted.

The conductor of the car was not called by the defendant as a witness. It was shown that he was not in the employ of the company, was not within the jurisdiction of the court, and that he was working in Tampa, Fla., and refused to come as a witness for the defendant on its request. Counsel for the defendant requested the court to instruct the jury that no inference adverse to the defendant could be drawn from the absence of the conductor, who was no longer in its employ, was without the state, and refused to appear as a witness. The court said concerning this request: "I will charge it with this modification: that you have a right to consider the failure of the defendant to procure the testimony of the conductor by commission as a circumstance bearing upon the facts in the case." Defendant excepted to the refusal of the court to charge as requested, and to the modification as charged. This exception also presents a reversible error. The defendant was under no obligation to issue a commission to examine this witness, who was not in its employ, and was employed and sojourning, if not residing, in another state. Furthermore, it does not appear that he saw the accident, or could have given any material evidence.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.